1
2
3
4
5
6
7                         UNITED STATES DISTRICT COURT
8                         EASTERN DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| **DAVID LEE TURNER, JR., et al.,** | **CASE NO. 1:11-CV-1366 AWI SKO** |
| **Plaintiffs** | |
| v. | **ORDER ON PLAINTIFFS' MOTIONS IN LIMINE NUMBERS 9 & 10** |
| **COUNTY OF KERN, et al.,** | |
| **Defendants** | |

On December 3, 2013, a hearing was held on the parties' motions in limine. At the hearing, and in connection with two of Plaintiffs' motions, Plaintiffs cited and relied on *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), an opinion that was decided on December 2, 2013. The Court gave Defendants additional time to review *Hayes*, and ordered the parties to submit letter briefs. A telephonic hearing was set for December 6, 2013. However, prior to the telephonic hearing, Defendants filed an ex parte motion to withdrawal and a request to permit substitution of attorney, with respect to Defendant Deputy Aaron Nadal. The Court did not rule on the two motions in limine, but resolved the issue of Nadal's representation and vacated the then existing trial date.

On February 10, 2014, a motions in limine and trial confirmation hearing was held. Plaintiff had filed one new motion in limine. The two prior *Hayes* related motions were not re-noticed, despite the amended pre-trial order requiring re-noticing of any unresolved motions. See

Doc. No. 101. At the hearing, the parties reiterated that a ruling was necessary on Plaintiffs' two *Hayes* related motions. This order resolves Plaintiffs' two *Hayes* related motions.

# I. Plaintiffs' Motion In Limine (No. 9) To Exclude Evidence Of Drugs & Alcohol In David Turner, Sr.'s System At The Time Of The Shooting

*Plaintiffs' Argument*

Plaintiffs argue that all evidence concerning the presence of methamphetamine and alcohol in David Turner, Sr.'s ("Turner") system should be excluded. Facts and circumstances unknown Deputies Kraft and Nadal are not relevant under the *Graham* factors for evaluating excessive force. There is no evidence in the record that remotely suggests that Kraft and Nadal even suspected that Turner was under the influence of alcohol and/or drugs. Thus, there is little or no relevance to the drugs or alcohol in Turner's system. Admitting such evidence would improperly prejudice Plaintiffs because the jury could decide issues based on a dislike of drug users, or the jury could use the information to help evaluate whether the deputies' actions were reasonable despite their lack of knowledge of the drugs and/or alcohol in Turner's system.

In their letter brief, Plaintiffs argue that the relevant issue is whether the officers acted reasonably under the totality of the circumstances in using force. *Hayes* makes clear that only information that is known by the offices is relevant to assessing the totality of the circumstances. *Hayes* held that evidence of the decedent's alcohol intoxication could not be considered under the totality of the circumstances because the relevant officers did not know about it. Further, *Hayes* cited *Glenn v. Washington Cnty*, 673 F.3d 864 (9th Cir. 2011), which stated that a person's suicidal thoughts could not be considered because the officers were unaware of those thoughts. Here, there is no indication that either Kraft or Nadal knew or even suspected that Turner was intoxicated. Under *Hayes*, evidence of drugs and/or alcohol in Turner's body is irrelevant.

*Defendants' Opposition*

Defendants argue that, in excessive force cases, if what the officers perceived just prior to the use of force is in dispute, then evidence that may support one version of events over another is relevant and admissible. The Ninth Circuit has permitted the admission of, and other courts have

admitted, evidence that an excessive force plaintiff was on drugs at the time of the incident. Such evidence is relevant to the issue of the decedent's conduct and the officers' account of that behavior. In this case, there is a factual dispute between the deputies and Plaintiff Alfonso Turner about Turner's actions. The existence of drugs and alcohol in Turner's system would help to explain Turner's conduct, and would corroborate the deputies' testimony that Turner was attempting to leave the scene before the officers could complete their investigation.

In their letter brief, Defendants argue that *Hayes* does not require the granting of this motion in limine. Defendants agree that *Hayes* forbids considering the methamphetamine and alcohol that was detected in Turner, Sr.'s system as part of the excessive force totality of the circumstances inquiry. However, because there is a dispute about Turner's conduct. As per *Boyd v. City & Cnty of San Francisco*, 576 F.3d 938 (9th Cir. 2009), evidence of alcohol and methamphetamine in Turner's system is relevant to explain Turner's conduct and to corroborate the deputies' version of events. In *Hayes*, unlike this case, there was no dispute as to what decedent Hayes was doing before he was shot, and there was no argument that the evidence was necessary to explain conduct. Further, *Hayes* did not even cite to or address the rational of *Boyd*.

*Discussion*

"In a case . . . where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." Boyd v. City & Cnty of San Francisco, 576 F.3d 938, 948-49 (9th Cir. 2009). In *Boyd*, the Ninth Circuit upheld a ruling that allowed evidence that a decedent had been on drugs at the time of a police shooting because the evidence "was highly probative of the decedent's conduct, particularly in light of [the decedent's] alleged erratic behavior . . . ." Id. at 949. It is not uncommon for courts to permit evidence that a plaintiff/decedent was under the influence of drugs or alcohol in order to explain unusual behavior or to corroborate the officers' version of how a decedent acted. See Turner v. White, 980 F.2d 1180, 1182-83 (8th Cir. 1992) (citing *Saladino* and upholding admission of alcohol consumption because "it was incumbent upon the jury to consider Officer White's actions in relation to all the circumstances of the situation that confronted him. We therefore believe the evidence of alcohol consumption was relevant to the jury's assessment of that

3

situation . . . ."); Saladino v. Winkler, 609 F.2d 1211, 1214 (7th Cir. 1979) ("This evidence tends to make more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such a manner as to place the defendant reasonably in fear of his life."); Lopez v. Aitken, 2011 U.S. Dist. LEXIS 16396, *3-*5 (S.D. Cal. Feb. 18, 2011) ("Evidence of Mr. Lopez's intoxication substantiates Defendants' assertions that Mr. Lopez was acting irrationally and unpredictably at the time of the incident, and their claims that Mr. Lopez resisted arrest."); Cotton v. City of Eureka, 2010 U.S. Dist. LEXIS 136270, *19-*20 (N.D. Cal. Dec. 18, 2010) ("The flaw in [plaintiff's] argument is that it overlooks that evidence that the Decedent was under the influence of LSD may be probative of his behavior at the time of the incident."); T.D.W. v. Riverside County, 2010 U.S. Dist. LEXIS 35821, *8-*11 (C.D. Cal. Mar. 11, 2010) (denying reconsideration of admission of intoxication because such evidence "was probative of decedent's erratic behavior immediately preceding and at the time of the shooting . . . ."). That law enforcement officers may not have suspected intoxication of some sort does not make evidence of intoxication inadmissible, especially when there is a dispute as to the plaintiff/decedent's conduct. See T.D.W., 2010 U.S. Dist. LEXIS 35821 at *8-*11 (admitting evidence of decedent's intoxication despite no evidence that the deputies suspected intoxication); see also Boyd, 576 F.3d at 942-43, 949 (upholding admission of drugs in decedent's system, but not mentioning whether the officers suspected intoxication).

Here, there is clearly a dispute as to how Turner acted. Evidence of intoxication would be relevant to explain Turner's conduct (including any attempts to leave the scene) and, depending on exactly how much of Turner's conduct is in dispute, to corroborate the officers' version of events. Evidence that there was a significant amount of methamphetamine and/or alcohol in Turner's system is relevant and admissible.

With respect to *Hayes*, officers in that case responded to a domestic disturbance call. See Hayes, 736 F.3d at 1227. Hayes's wife explained that Hayes had attempted suicide and was concerned that he would harm himself. See id. The officers entered the residence, saw Hayes, and told him to show them his hands. See id. Hayes took steps towards the officers, raised his hands to shoulder level, and revealed a large knife in his hands. See id. at 1227-28. The officers

believed that Hayes was a threat and almost immediately shot and killed Hayes.  See id. at 1228.  Hayes apparently had been intoxicated, but the officers neither knew nor suspected intoxication.  See id. at 1232-33.  The Ninth Circuit stated in part: ". . . we can only consider the circumstances of which [the officers] were aware when they employed deadly force.  Accordingly, when analyzing the objective reasonableness of the officers' conduct under *Graham*, we cannot consider the fact that Hayes was intoxicated or that he had previously used a knife in harming himself."  Id.  Of note, the *Hayes* court neither cited nor discussed *Boyd*.

The Court reads *Hayes* to mean that, if an officer does not know or believe someone to be intoxicated, evidence of intoxication may not be considered under the totality of the circumstances in assessing whether an officer acted reasonably/used excessive force.  See id.  However, *Hayes* does not say that evidence of intoxication is inadmissible for all purposes.  *Hayes* neither discussed nor cited to *Boyd*.  This is likely because in *Hayes*, there was no dispute about what Hayes was doing before he was shot, and there was no argument that the evidence of alcohol consumption was relevant to explain Hayes's actions.  That is different from this case.

Here, because Turner's actions and conduct are in dispute, *Boyd*, and not *Hayes*, controls.  However, as Defendants concede, the evidence is relevant only to explain Turner's conduct and to corroborate the officers' version of events; the evidence is not relevant to the excessive force totality of the circumstances inquiry.

## II.  **Plaintiffs' Motion In Limine (No. 10) To Exclude Opinions Of Defense Expert Dr. Vina Spiehler Regarding The Effects Of Drugs & Alcohol (In Turner's System) On Turner's Behavior**

*Plaintiffs' Argument*

Plaintiffs argue that defense expert Dr. Vina Spiehler should be precluded from offering three opinions:  (1) that Turner was under the influence of an abusive and possibly toxic level of methamphetamine; (2) that Turner was under the influence of a low amount of ethanol; and (3) Turner would have been more likely to engage in violent behavior and to exhibit unpredictable irrational responses while under the influence of a combination of ethanol and methamphetamine.

Spiehler's third opinion is not based on sufficient facts or data, and thus is unreliable under FRE 702. Spiehler had never seen Turner either sober or under the influence of methamphetamine and she was not provided information about Turner's history of drug use or habitual levels of drug/alcohol use. This case is similar to *Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008), in which the Seventh Circuit upheld the exclusion of expert testimony regarding the impairing effects of drugs because, although the expert hoped to shed light on drug users (heroin) as a group, the expert had nothing useful to say about the plaintiff's condition at the critical time.

Additionally, for the Federal Rule of Evidence 403 reasons described in the previous motion in limine, this motion should be granted. That is, the officers did not suspect that Turner was under the influence of methamphetamine or alcohol and the introduction of such evidence would be unduly prejudicial.

*Defendants' Opposition*

Defendants argue that Spiehler is a toxicologist who reviewed the blood drawn from Turner at the Kern Medical Center shortly after the shooting. Spiehler opined that that Turner was under the influence of alcohol and methamphetamine based on the blood test results. Spiehler believes that the levels of methamphetamine found in Turner's blood were at toxic levels. Spiehler testified as to typical behaviors that are seen in individuals with these levels, based upon various studies of which she was aware and/or participated. Spiehler's opinions are reliable and relevant.

*Discussion*

Despite listing three opinions, Plaintiffs' arguments focus only on the third opinion.

As for the first opinion, Spiehler can testify as to the quantities of alcohol and/or methamphetamine detected in Turner, and can also opine that the levels are high. As discussed in the previous motion, evidence that alcohol and/or methamphetamine were detected in Turner is admissible for the purpose of explaining Turner's conduct and/or corroborating the deputies' version of events. Testimony that confirms the presence and quantity of alcohol and/or methamphetamine is necessary. Further, although some testimony that describes the quantity found, such as a "high amount," may be acceptable, not all descriptions are admissible. It is not

clear to the Court that it is necessary for Spiehler to opine that the detected levels are consistent with an "abusive amount." By opining that the amount detected is consistent with drug abuse, there is a substantial danger of unfair prejudice that may result from information that Turner may have been a drug addict. See Fed. R. Evid. 403. At this point, and as to this opinion, only evidence that drugs and alcohol were detected, as well as the quantities of the drugs and alcohol with limited description, will be admitted.

As for the second opinion, the significance of ethanol detection and influence has not been explained. If the level of ethanol detected could be expected to alter behavior, then evidence that ethanol was detected, the quantity at which it was detected, and that the quantity is associated with altered behavior may be admitted. However, before such evidence is admitted, Defendants will be required to lay the proper foundation.

As to the third opinion, assuming that the proper foundation is laid, Spiehler can testify in general that the detected quantities of methamphetamine and alcohol have been known to affect thought processes and behavior. Further, Spiehler can opine that certain conduct is consistent with the known effects of the detected alcohol and/or methamphetamine, if Turner exhibited that conduct. Such testimony gives meaning to the evidence that alcohol and methamphetamine was detected, and helps to explain conduct. However, discussing known "effects" that were not reasonably demonstrated during the encounter is unduly confusing and prejudicial. Further, opining about how violent or irrational Turner would likely become, or had become, is problematic. The Court understands that the primary purpose of Spiehler's testimony is to explain that alcohol and/or methamphetamine were detected, and then to give that information meaning in the context of *Boyd*. Under *Boyd* and as applied in this case, evidence of "intoxication" is used to explain behavior or corroborate one version of events. Thus, explaining that violent conduct is consistent with a certain level of methamphetamine is helpful, but stating in general that Turner would be more violent is not.

With respect to *Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008), that case involved the exclusion of an expert witness, one O'Donnell. The district court found O'Donnell's testimony to be unhelpful, his credentials to be weak, and that he had not referred to scientific literature. See

7

id. at 676.  O'Donnell was going to testify about the ability of the plaintiff to recall events, based on the plaintiff's admission that he had taken a "small amount" of heroin.  See id.  O'Donnell did not know a baseline against which to judge whether Kunz was impaired, nor did he know Kunz's habituation level.  See id. O'Donnell hoped to shed light on heroin users as a group, but had nothing useful to say about Kunz's condition at the critical time.  See id.  Further, even accepting O'Donnell's testimony, the impairing effects of heroin should have worn off at least 90 minutes before the car chase.  See id.  Here, in contrast, Spiehler would testify based on the precise levels of methamphetamine and alcohol that were actually detected in Turner's system.  That is, Spiehler has useful information concerning Turner near the critical time.  Spiehler's opinion also appears to be based on her experience and on relevant literature/studies.  Although Spiehler does not know Turner's particular history or habits, she does know the levels that were actually detected in Turner.  Any quirks that may be unique to Turner, or that may affect how symptoms manifest or how behavior could be altered, can be explored on cross-examination.

Accordingly, as to the third opinion, as long as Defendants lay the proper foundation, Spiehler will be permitted to testify that the levels of alcohol and/or methamphetamine have been known to affect/alter behavior and/or thought processes.  Spiehler may also testify that particular conduct is consistent with the known effects of the alcohol and methamphetamine detected. Spiehler cannot testify about known "effects" that were not exhibited, nor may Spiehler opine that Turner would likely behave a certain way because of the alcohol and/or methamphetamine in his system.

## CONCLUSION

Evidence that drugs and/or alcohol were detected in Turner's system will be admitted for the purpose of explaining Turner's behavior and corroborating Kraft and Nadal's version of events.  See Boyd, 576 F.3d at 948-49.  As long as the proper foundation is laid, Spiehler will be permitted to testify about the quantities of alcohol, ethanol, and methamphetamine that were detected in Turner, and can testify that the quantities detected could affect behavior and/or thought processes.  The Court will give limiting instructions as the parties deem necessary.

**ORDER**

1. Plaintiff's motion in limine 9 is DENIED consistent with the above analysis;
2. Plaintiff's motion in limine 10 is DENIED consistent with the above analysis;
3. In preparation for admission of the above described evidence, the parties shall submit any limiting instructions that they believe is appropriate; and
4. In order to ensure the efficient presentation of evidence, the parties shall meet and confer for the purpose of discussing any additional issues or concerns that may arise regarding the rulings in this order or the expected testimony of Dr. Spiehler.

IT IS SO ORDERED.

Dated:   February 12, 2014                      _____
                                                SENIOR DISTRICT JUDGE